IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEEP FIX, LLC, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-0948 |
| | § | |
| MARINE WELL CONTAINMENT | § | |
| COMPANY LLC, | § | |
| Defendant. | § | |

## **MEMORANDUM AND ORDER**

This patent case is before the Court on the "Motion for Partial Judgment on the Pleadings and to Dismiss Defendant's Inequitable Conduct Claims Pursuant to Fed. R. Civ. P. 9(b) and 12(c)" ("Motion to Dismiss") [Doc. # 137] filed by Plaintiff Deep Fix, LLC ("Deep Fix"). Defendant Marine Well Containment Company LLC ("MWCC") filed an Opposition [Doc. # 148] to the Motion to Dismiss, and Deep Fix filed a Reply [Doc. # 155]. Having reviewed the record, with particular attention to the allegations in Defendant's Fourth Amended Answer [Doc. # 60], and having applied relevant legal authorities, the Court **denies** the Motion to Dismiss.

## **I.    BACKGROUND**

Charles Adams is the sole inventor of the cap valve covered by the '393 Patent. Through a series of assignments, Deep Fix asserts sole ownership of all interest in the '393 Patent.

MWCC is a consortium of oil and gas companies including ExxonMobil, British Petroleum ("BP"), and others. MWCC manufactures oil and gas well containment systems used in well blowout situations.

On September 3, 2010, Adams filed a provisional patent application for his cap valve invention. *See* Complaint [Doc. # 1], ¶ 14. On September 2, 2011, Adams filed a non-provisional patent application and claimed priority based on the provisional patent application filed in 2010. *See id.* The '393 Patent issued on September 16, 2014. *See id.*

Deep Fix filed this patent infringement lawsuit on March 26, 2018, alleging that three well containment systems manufactured by MWCC infringe the claims of the '393 Patent. MWCC filed its Answer on June 18, 2018. In the Answer, MWCC asserted the affirmative defense of inequitable conduct. *See* Answer [Doc. # 31], p. 9. On July 9, 2018, MWCC filed an Amended Answer again pleading the affirmative defense of inequitable conduct. *See* Amended Answer [Doc. # 34], pp. 17-23. On August 14, 2018, MWCC filed a Second Amended Answer, again asserting inequitable conduct. *See* Second Amended Answer [Doc. # 46], pp. 17-23. On September 18, 2018, MWCC filed a Third Amended Answer asserting inequitable conduct. *See* Third Amended Answer [Doc. # 52], pp. 18-31. On November 16, 2018, MWCC filed its Fourth Amended Answer asserting inequitable conduct as the

fifth affirmative defense.  *See* Fourth Amended Answer [Doc. # 60], pp. 24-61.  On May 30, 2019, Deep Fix filed the pending Motion to Dismiss challenging the inequitable conduct affirmative defense in the Fourth Amended Answer.  The Motion to Dismiss has been fully briefed and is now ripe for decision.

**II.     RULE 12(c) STANDARD**

The standard for a motion for judgment on the pleadings under Rule 12(c) "is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).  The Court must accept the well-pleaded facts in the affirmative defense as true and view them in the light most favorable to the defendant.  *See id.*  The Court should deny the 12(c) motion unless the defendant could not succeed on the affirmative defense "under any set of facts that he could prove" consistent with the affirmative defense.  *See id.*

To plead inequitable conduct with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009); *Sanders v. The Mosaic Co.*, 418 F. App'x 914, 918 (Fed. Cir. Apr. 20, 2011).  At the pleading stage, however, the party asserting inequitable conduct is required to plead only those facts that support "a reasonable inference that a specific individual

knew of the misrepresentation and had the specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29.

## III. ANALYSIS

### A. Legal Standards for Inequitable Conduct Defense

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1272 (Fed. Cir. 2018) (quoting *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc)). "To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the [Patent and Trademark Office ("PTO")]." *Id.* (quoting *Therasense*, 649 F.3d at 1287).

Generally, the "materiality" required for a successful inequitable conduct defense is "but-for" materiality. *See Regeneron Pharm., Inc. v. Merus N.V.*, 864 F.3d 1343, 1350 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 122 (2018). A prior art reference is "but-for" material if the PTO "would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* However, when the patentee "has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material" and no further showing of materiality is required. *Therasense*, 649 F.3d at 1292.

The party asserting inequitable conduct must also prove "that the patentee acted with the specific intent to deceive the PTO." *See Regeneron*, 864 F.3d at 1350 (quoting *Therasense*, 649 F.3d at 1290). "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference." *Id*. at 1351. The alleged infringer need not present direct evidence of intent, and a court may infer intent from circumstantial evidence. *Id*. "An inference of intent to deceive is appropriate where the applicant engages in 'a pattern of lack of candor,' including where the applicant repeatedly makes factual representations 'contrary to the true information he had in his possession.'" *Id.* (quoting *Apotex Inc. v. UCB, Inc.*, 763 F.3d 1354, 1362 (Fed. Cir. 2014)).

"When a party raises inequitable conduct as a defense to patent infringement, [t]he accused infringer must prove both elements – intent and materiality – by clear and convincing evidence." *Rembrandt Techs.*, 899 F.3d at 1272 (internal quotations and citation omitted). Ultimately, inequitable conduct "is an equitable issue committed to the discretion of the trial court." *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1333 (Fed. Cir. 2019).

## B. Allegations in Fourth Amended Answer

In the Fourth Amended Answer, MWCC alleges in great detail that Adams both withheld relevant and material information from the PTO and submitted false "Verified Statements" in connection with the application for the '393 Patent. MWCC has adequately alleged its inequitable conduct affirmative defense.

MWCC identifies the January 26, 2016 publication ("the '165 Publication") of a patent application ("the '330 Application") that resulted in MWCC's U.S. Patent No. 9,004,176 ("the '176 Patent"). *See* Fourth Amended Answer, ¶ 5.c. MWCC describes the materiality of the '165 Publication. *See id.*, ¶¶ 5.d - 5.g. MWCC alleges that Adams and his attorney "either were aware of MWCC's '165 Publication or intentionally refused to search for patents or patent applications covering MWCC's" allegedly infringing products. *Id.*, ¶ 5.k. MWCC alleges further that Adams and his attorney "intentionally refused to provide" information – including the '165 Publication – to the PTO during the prosecution of the '393 Patent. *See id.*

MWCC makes similar allegations regarding other information Adams failed to provide to the PTO in connection with the application for the '393 Patent. For example, MWCC alleges Adams failed to provide material documents Adams knew about by July 24, 2012, when he received a list of the documents in connection with a lawsuit in Virginia. *See id.*, ¶¶ 5.dd - 5.ff. MWCC alleges Adams "misled" the PTO

by failing to submit material information regarding the Macondo Sealing Cap. *See id.*, ¶¶ 5.hh - 5.jj. MWCC identifies material photographs, drawings, and prior patents that Adams failed to provide to the PTO. *See, e.g., id.*, ¶¶ 5.ll; 5.nn; 5.mmm - 5.qqq. MWCC alleges that had Adams and/or his attorney submitted this prior art evidence to the PTO, "it is reasonable to conclude that the examiner would have found the '393 Patent to be invalid as anticipated . . . under 35 U.S.C. § 102." *See id.*, ¶ 5.tt; *see also id.*, ¶ 5.qqq.

Perhaps the most egregious example of Adams' alleged failure to provide material information to the PTO during the prosecution of the '393 Patent application involves Adams's International Patent Application, filed September 2, 2011 with the Patent Cooperation Treaty's Receiving Office for the United States ("US/RO"). MWCC alleges that in February 2012, while the U.S. patent application was pending, the US/RO issued an International Search Report ("ISR") identifying ten prior art references designated as Category Y documents, signifying that the documents are of "particular relevance." *See id.*, ¶¶ 5.rrr - 5.ttt. MWCC alleges that also in February 2012, the US/RO issued a Written Opinion explaining that none of Adams's patent claims were patentable in view of the Category Y prior art documents. *See id.*, ¶ 5.vvv. MWCC alleges that Adams and his attorney knew of the ISR, the Category Y documents, and the Written Opinion, and knew of their importance. *See id.*,

¶ 5.aaaa. MWCC alleges that although the US/RO issued the Written Opinion based on the ISR and the Category Y documents "seventeen months before the [PTO] issued its first non-final office action on Mr. Adams's U.S. patent application," neither Adams nor his attorney ever disclosed this information to the PTO. *See id.*, ¶ 5.bbbb. MWCC alleges that Adams and his attorney "intentionally withheld" this information from the PTO "in order to deceive the USPTO." *Id.*, ¶¶ 5.pppp; 5.rrrr.

These allegations, accepted as true and viewed in the light most favorable to MWCC for purposes of a Rule 12(c) motion, are ample to satisfy the pleading requirements for an inequitable conduct affirmative defense based on withholding material information from the PTO.

MWCC alleges also that Adams engaged in inequitable conduct by submitting a false statement to the PTO in connection with the application for the '393 Patent. Specifically, MWCC alleges that in May 2010, Adams "assigned his interest in his invention for a cap valve to Commonwealth Investment Group." *See id.*, ¶ 5.vv. MWCC alleges that in September 2010, Adams signed and caused to be filed with the PTO a "Verified Statement" representing falsely to the PTO that he had not assigned his rights in the invention to any "person, concern or organization." *See id.*, ¶ 5.ww. The "Verified Statement" includes an acknowledgment that willful false statements "are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of

the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed." *See id.*, ¶ 5.yy. MWCC alleges that the Verified Statement was false when made, and that Adams knew the Verified Statement was false when he submitted it to the PTO. *See id.*, ¶¶ 5.zz - 5.aaa. These allegations are sufficient to plead the affirmative defense of inequitable conduct through the submission of false statements to the PTO.

## IV. <u>CONCLUSION AND ORDER</u>

MWCC has more than adequately alleged a factual basis for its inequitable conduct affirmative defense. Neither Deep Fix's disagreement with MWCC's factual allegations, nor its belief that MWCC will be unable to prove the allegations by clear and convincing evidence, is a basis for judgment on the pleadings under Rule 12(c). Accordingly, it is hereby

**ORDERED** that Deep Fix's Motion to Dismiss [Doc. # 137] is **DENIED**.

SIGNED at Houston, Texas, this **12th** day of **August, 2019.**

*[signature]*

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE