United States District Court
Southern District of Texas
**ENTERED**
September 05, 2019
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DEEP FIX, LLC, Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-18-0948 |
| MARINE WELL CONTAINMENT COMPANY, LLC, Defendant. | § | |

**MEMORANDUM AND ORDER**

On April 24, 2019, the Court issued its Memorandum and Order on Claim Construction ("April 24 Order") [Doc. # 127], construing the disputed claim terms in United States Patent No. 8,833,393 ("the '393 Patent") (the "Patent-in-Suit"). The case is now before the Court on the Motion to Modify the April 24 Order on Claim Construction ("Motion to Modify") filed by Plaintiff Deep Fix, LLC ("Deep Fix"), to which Defendant Marine Well Containment Company, LLC ("MWCC") filed a Response [Doc. # 158], and Deep Fix filed a Reply [Doc. # 160]. Having reviewed the record and the applicable legal authorities, the Court ***denies*** the Motion to Modify.

## I. BACKGROUND

Charles Adams is the sole inventor of the cap valve covered by the '393 Patent. Through a series of assignments, Deep Fix asserts sole ownership of all interest in the

’393 Patent. MWCC is a consortium of oil and gas companies including ExxonMobil, British Petroleum (“BP”), and others.

Drilling an offshore well involves connecting a line from a drilling rig, through a well bore, to an oil or gas reservoir beneath the sea floor. *See* MWCC’s Technical Tutorial [Doc. # 69], p. 1. An uncontrolled release of high pressure water, natural gas, and/or crude oil up into the well bore is known as a blowout. *See id.* To reduce the chances of a blowout, a blowout preventer (“BOP”) is present near the well during drilling operations. *See id.* Traditional BOPs seal off the area of the well bore around the drill pipe, often using “blind shear rams” to cut the drill pipe and seal the well. *See id.* at 1-2.

On September 3, 2010, Adams filed a provisional patent application for his cap valve invention. *See id.*, ¶ 14. On September 2, 2011, Adams filed a non-provisional patent application and claimed priority based on the provisional patent application filed in 2010. *See id.* The ’393 Patent issued on September 16, 2014. *See id.*

MWCC manufactures oil and gas well containment systems used in well blowout situations. Specifically, MWCC manufactures the following three containment systems: (1) the Subsea Containment System; (2) the 15K PSI Capping Stack, and (3) the 10K PSI Capping Stack (collectively, the “Accused Devices”).

Deep Fix filed this patent infringement lawsuit on March 26, 2018, alleging that the Accused Devices infringe the claims of the ’393 Patent.

The parties identified disputed claim terms in the ’393 Patent that required construction by the Court. The parties filed claim construction briefs, the Court conducted a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) (“*Markman* Hearing”), and the parties filed post-*Markman* Hearing briefs. In the April 24 Order, the Court construed the disputed claim terms.

The Court construed the claim term “outlet ports” in the ’393 Patent to mean “multiple openings in the cylindrical valve chamber or in the intermittent pipe that can permit outward flow of high pressure fluids.” *See* April 24 Order, p. 8. The Court construed the term “primary hydraulic ram” in the ’393 Patent to mean “a unitary piston-like device located in the valve chamber that moves in response to fluid pressure.” *Id.* at 13. Deep Fix seeks modification of these two claim construction rulings. The Motion to Modify has been fully briefed and is now ripe for decision.

## II. <u>LEGAL STANDARD FOR MOTION TO MODIFY</u>

Federal Circuit precedent generally controls in patent cases, but district courts apply the legal standard of their regional circuit on motions to reconsider. *See Minton v. NASD, Inc.*, 336 F.3d 1373, 1378-79 (Fed. Cir. 2003). Although Deep Fix does not

identify the basis for its Motion to Modify, the Court will treat the motion as one filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.[1]

A Rule 59(e) motion requesting reconsideration of a prior ruling is an "extraordinary remedy that should be used sparingly." *See Waites v. Lee County, Miss.*, 498 F. App'x 401, 404 (5th Cir. Nov. 26, 2012) (quoting *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)). A motion for reconsideration "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 479; *Knight v. Kellogg Brown & Root Inc.*, 2009 WL 1471788, at *6 (5th Cir. 2009) (quoting *Templet*, 367 F.3d at 479). Instead, Rule 59(e) serves the narrow purpose of allowing a party to bring errors or newly discovered evidence to the Court's attention. *See In re Rodriguez*, 695 F.3d 360, 371 (5th Cir. 2012) (citing *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)).

A litigant seeking relief under Rule 59(e) "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Balakrishnan v. Bd. of Supervisors of La. State Univ. & Agr. & Mech. Coll.*, 452 F.

---

[1] Motions for reconsideration of a court's *Markman* rulings are governed by the standards for motions pursuant to Federal Rule of Civil Procedure 59(e). *See Brown v. Baylor Healthcare Sys.*, 2009 WL 1342933, *2 (S.D. Tex. May 11, 2009) (Rosenthal, J.).

App'x 495, 499 (5th Cir. 2011) (citing *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (quotation marks and citation omitted)). A Rule 59(e) motion "cannot be used to argue a case under a new legal theory." *Id*. (citing *Ross*, 426 F.3d at 763).

Alternatively, the Court could construe the Motion to Modify as one filed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Rule 54(b) allows a party to seek reconsideration of interlocutory orders, and authorizes the district court to revise at any time an order or other decision that does not end the case. *See Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (citing FED. R. CIV. P. 54(b)). Under Rule 54(b), the district court is free to reconsider its decision "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id*. (internal quotation marks and citations omitted). Like Rule 59(e) motions, Rule 54(b) motions are disfavored. *See PYCA Indus., Inc. v. Harrison County Waste Mgmt*., 81 F.3d 1412, 1421 (5th Cir. 1996). The Court's ruling on Deep Fix's Motion to Modify would be the same under either Rule 59(e) or Rule 54(b).

## III. OUTLET PORTS

The Court construed the claim term "outlet ports" in the '393 Patent to mean "multiple openings in the cylindrical valve chamber or in the intermittent pipe that can permit outward flow of high pressure fluids." *See* April 24 Order, p. 8. Deep Fix

argues that the Court improperly construed the claim term to include the limitation that the outlet ports be "in the cylindrical valve chamber" rather than anywhere in the cap valve.[2] Deep Fix proposes a modified construction of the claim term "outlet ports" to mean "multiple openings that can permit outward flow of high pressure fluids." *See* Proposed Order [Doc. # 152-1].

The term "outlet ports" appears in Claim 1 of the '393 Patent, which states in relevant part "outlet ports (22) disposed in the cap valve (12), or in the intermittent pipe (18), above the hydraulic clamp (20)." *See* '393 Patent, Exh. 1 to Complaint [Doc. # 1], Claim 1. Claim 1 also includes a primary hydraulic ram in the "valve hydraulic cylinder" that telescopically closes or opens "access to the outlet ports (22) by moving the primary seal (28) into position to open or block fluid communication through the outlet ports (22)." *See id.*

The term appears also in Claim 10, which states in relevant part "a primary hydraulic ram (26) . . . within the cylindrical valve chamber (16) to telescopically close or open [access] to outlet ports (22) by moving the primary seal (28) into position to open or block fluid communication through the outlet ports (22)." *See id.*, Claim 10. It is clear in both Claim 1 and Claim 10 that the outlet ports in the cap

---

2 Deep Fix does not challenge that the outlet ports can be located in the intermittent pipe. Therefore, the Court's discussion does not address outlet ports located in the intermittent pipe, only those "in the cap valve (12)."

valve are necessarily located where they can be opened and closed by the primary hydraulic ram, which is located in the cylindrical valve chamber, moving the seal into position to block the outlet ports.

In the Court's April 24 Order, the Court noted that the parties "appear to agree that the outlet ports are located in the cylindrical valve chamber and in the intermittent pipe." *See* April 24 Order, p. 6. This was based on statements by counsel for Deep Fix during the *Markman* hearing. Counsel for Deep Fix identified the outlet ports in the preferred embodiment as being in the "cylindrical valve chamber." *See Markman* Hearing Transcript [Doc. # 116], p. 89. Counsel for Deep Fix explained further that the "ports have to be functionally connected to the oil flow." *See id.* Similarly, counsel explained that the outlet ports must be "in such a position that the ram can shut off flow to the outlet ports." *See id.* at 100.

Deep Fix's written position was consistent with counsel's statements during the *Markman* hearing. Deep Fix stated in the Joint Submission Re Claim Construction [Doc. # 117] that the outlet ports are in a location that allows the seal to "block the high pressure flow of liquids to the outlet ports." In its Supplemental Brief on Disputed Claim Terms [Doc. # 118], Deep Fix stated that the "primary hydraulic ram" is a "device that moves through the valve chamber . . . to seal wellhead flow and thus restrict flow through outlet ports." Deep Fix's position throughout the *Markman*

briefing and argument was that the outlet ports must be located such that the primary hydraulic ram in the cylindrical valve chamber can close the flow of fluid through the outlet ports. Accordingly, if the outlet ports are located anywhere "in the cap valve (12)" other than in the cylindrical valve chamber, the ram would not restrict flow through the outlet ports.

Deep Fix's statements at the *Markman* hearing and in the *Markman* briefing are also consistent with the patent applicant's statements to the Patent and Trademark Office ("PTO"). In response to a rejection, the applicant's attorney distinguished prior art referred to as "Ledeen (US4051676)" by stating that the Ledeen device "does not appear to be incorporated within a cylindrical valve chamber (16) so that it could be used to close or open outlet ports (22) along the chamber (16)." *See* Amendment, Exh. C2 to MWCC's *Markman* Brief [Doc. # 76], p. 12. Although Deep Fix in its Supplemental Brief characterized this statement as "gratuitous" and "superfluous," Deep Fix does not deny that its attorney made the quoted statement to the PTO. *See* Supplemental Brief [Doc. # 118], pp. 3-4.

Deep Fix now argues that the Court's construction improperly incorporates a location limitation from the Specification, and states repeatedly that the outlet ports can be anywhere in the cap valve. Yet Deep Fix – in *Markman* briefing, in argument during the *Markman* hearing, or in support of the Motion to Modify – has been unable

to identify any location for the outlet ports other than in the cylindrical valve chamber that would permit its cap valve to function as described in the '393 Patent. An element of a patent claim cannot be viewed "in a vacuum, devoid of the context of the claim as a whole." *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1347 (Fed. Cir. 2008) (citing *Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1374 (Fed. Cir. 1999); *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003)).[3] Indeed, "the person of ordinary skill in the art[4] is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1370 (Fed. Cir. 2016) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*). Accordingly, "the only meaning that matters in claim construction is the meaning in the context of the patent." *Id*. (quoting *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016)). In the context of the '393 Patent, including all language in Claim 1

---

[3] Deep Fix attempts to avoid the Federal Circuit's holding in *Kyocera* and other cases cited by MWCC by identifying differences between the facts in the cited cases and those in this case. The minor factual differences identified by Deep Fix do not, however, persuade the Court to ignore the binding Federal Circuit authority.

[4] Deep Fix argues in its Reply that "the proper locations of outlet ports in a cap valve can be worked out by any reasonably competent petroleum engineer." Reply [Doc. # 160], p. 4. Deep Fix has not, however, presented any evidence of a "reasonably competent petroleum engineer" who states that the outlet ports could be located in the cap valve anywhere other than in the valve chamber.

and Claim 10, the outlet ports "in the cap valve (12)" must be located in the cylindrical valve chamber.

Deep Fix argues also that the doctrine of claim differentiation requires that Claim 10 be construed more broadly than Claim 1. Under claim differentiation, there is "presumed to be a difference in meaning and scope when different words or phrases are used in separate claims." *See* Motion to Modify, p. 7 (quoting *Inline Plastics Corp. v. EasyPak, LLC*, 779 F.3d 1364, 1371 (Fed. Cir. 2015)). Although neither claim uses the word "located," Claim 1 and Claim 10 both describe the outlet ports as being in a location where they can be closed by the primary hydraulic ram in the cylindrical valve chamber moving the primary seal into position. The claims do not use different terms to describe this necessary location of the outlet ports. Therefore, Deep Fix's claim differentiation argument is unpersuasive.

For the reasons stated herein, as well as in the April 24 Order regarding the Detailed Description of the Preferred Embodiment, the Court **denies** the Motion to Modify. The Court maintains its prior construction of "outlet ports" in the '393 Patent to mean "multiple openings in the cylindrical valve chamber or in the intermittent pipe that can permit outward flow of high pressure fluids."

## IV. PRIMARY HYDRAULIC RAM

The Court construed the term "primary hydraulic ram" in the '393 Patent to mean "a unitary piston-like device located in the valve chamber that moves in response to fluid pressure." *See* April 24 Order, p. 13. Deep Fix requests "clarification" regarding whether the Court construes the claim term "primary hydraulic ram" to include a limitation that the cap valve consists of only one ram. Deep Fix concedes that the Court stated clearly in the April 24 Order that:

> There appears to be only one hydraulic ram in the cap valve covered by the '393 Patent. Indeed, as [the patent applicant] represented to the Patent Examiner, the presence of only one ram distinguished the cap valve covered by the '393 Patent from the traditional BOP with three rams.[2]

April 24 Order, p. 9 (citing Amendment to Application for '393 Patent [Doc. # 76-5], p. 12). Deep Fix claims to be confused, however, based on footnote 2, which merely notes that a "traditional ram had two parts that would move toward each other to meet and form the seal." *See* Motion to Modify, p. 8 (citing April 24 Order, p. 9 n.2). It is clear, however, that the device covered by the '393 Patent does not use a traditional ram but, instead, uses a "primary hydraulic ram."

Deep Fix now argues that there is no "clear disavowal of multiple rams." *See id.* As the Court noted in its prior ruling, throughout the '393 Patent, all references to the "primary hydraulic ram" are to a single "ram." *See* April 24 Order, p. 8. For

example, the Abstract states that the "valve chamber (16) contains a primary hydraulic ram (26) . . .." *See* '393 Patent, Abstract. Similarly, the Detailed Description of Preferred Embodiments refers repeatedly and exclusively to a "hydraulic ram" - singular. *See, e.g.*, '393 Patent, 4:46-55. Most importantly, the claims refer only to a "primary hydraulic ram (26)." *See, e.g.*, *id.*, 6:31 (Claim 1); 6:42 (Claim 2); 6:47 (Claim 3); 6:52 (Claim 4); 8:5 (Claim 10). It is clear from the '393 Patent that the patented device includes multiple outlet ports that must be closed and opened by one unitary hydraulic ram.

Deep Fix argues also that the use of the word "comprising" indicates that the claim term "primary hydraulic ram" can include multiple rams. Deep Fix's reliance on *Gillette Co. v. Energizer Holdings Inc.*, 405 F.3d 1367 (Fed. Cir. 2005), is unpersuasive. In *Gillette*, the Federal Circuit held that "the language 'comprising . . . a group of first, second, and third blades' in the patent can encompass four-bladed safety razors." *Id*. at 1371. The Federal Circuit's holding was based, however, on the presence in the patent of the claim terms "comprising" and "group of." *Id*. A razor "comprising" a "group of" one, two, and three blades may logically encompass a razor with four blades. The Federal Circuit did not hold that the claim term "a group of" multiple blades would encompass a razor with a single blade. Similarly, in this case,

a "primary hydraulic ram" – singular – does not encompass multiple primary hydraulic rams.

Deep Fix has failed to demonstrate that the Court's claim construction was incorrect or unclear. As a result, the Motion to Modify the Court's construction of the claim term "primary hydraulic ram" to allow multiple rams is **denied**. The Court's construction of this claim term remains "a unitary piston-like device located in the valve chamber that moves in response to fluid pressure."

## V. CONCLUSION AND ORDER

The Court has again considered the intrinsic evidence in the record, limited extrinsic evidence, the parties' briefing on the Motion to Modify, and all other matters of record. The Court again construes the claim terms "outlet ports" and "primary hydraulic ram" in the '393 Patent as set forth in the April 24 Order. As a result, it is hereby

**ORDERED** that Deep Fix's Motion to Modify [Doc. # 150] is **DENIED**.

SIGNED at Houston, Texas, this **5th** day of **September, 2019**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE