IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEEP FIX, LLC, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. H-18-0948 |
| § | | |
| MARINE WELL CONTAINMENT § | | |
| COMPANY LLC, § | | |
| Defendant. § | | |

## **MEMORANDUM AND ORDER**

This patent case is before the Court on the "Motion for Summary Judgment of Unenforceability Due to Inequitable Conduct" ("Motion") [Doc. # 170] filed by Defendant Marine Well Containment Company LLC ("MWCC"). Plaintiff Deep Fix, LLC ("Deep Fix") filed an Opposition [Doc. # 177], and MWCC filed a Reply [Doc. # 181]. Having reviewed the record and applied relevant legal authorities, the Court **denies** the Motion in favor of a bench trial on MWCC's equitable defense.

### **I. BACKGROUND**

Charles Adams is the sole inventor of the cap valve covered by United States Patent No. 8,833,393 ("the '393 Patent"). Through a series of assignments, Deep Fix asserts sole ownership of all interest in the '393 Patent. Adams died on July 15, 2019, while this lawsuit was pending.

MWCC is a consortium of oil and gas companies including ExxonMobil, British Petroleum ("BP"), and others. MWCC manufactures oil and gas well containment systems used in well blowout situations.

On September 3, 2010, Adams filed a provisional patent application for his cap valve invention. *See* Complaint [Doc. # 1], ¶ 14. On September 2, 2011, Adams filed a non-provisional patent application and claimed priority based on the provisional patent application filed in 2010. *See id.* The '393 Patent issued on September 16, 2014. *See id.*

Deep Fix filed this patent infringement lawsuit on March 26, 2018, alleging that three well containment systems manufactured by MWCC infringe the claims of the '393 Patent. MWCC asserted the affirmative defense of inequitable conduct. *See* Fourth Amended Answer [Doc. # 60], pp. 24-61.

Deep Fix has conceded that it has no viable infringement claim against MWCC in light of the Court's Memorandum and Order on Claim Construction [Doc. # 127]. Therefore, MWCC's equitable affirmative defense that inequitable conduct bars Deep Fix from enforcing the '393 Patent against MWCC is an issue to be tried to the Court without a jury. *See Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1213 (Fed. Cir. 1987); *In re Ethicon, Inc.*, 64 F.3d 671, *1 (Fed. Cir. June 26, 1995).

The Motion for Summary Judgment has been fully briefed and is now ripe for decision.

## II. <u>SUMMARY JUDGMENT STANDARD</u>

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment when there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the movant bears the burden of proof at trial on the issues at hand, as is the case here, it "bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995); *see also Brandon v. Sage Corp.*, 808 F.3d 266, 269-70 (5th Cir. 2015); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

"When evaluating a motion for summary judgment, the court views the record evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits." *SRAM Corp. v. AD-II Engineering, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006). In this case, the defendant has the burden to prove the elements of an inequitable conduct defense by clear and convincing evidence. *See Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1299 (Fed. Cir. 2018).

If an issue of credibility exists, a motion for summary judgment should be denied. *See Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1163 (Fed. Cir. 1985)

(citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)). Stated differently, where there are specific facts that tend to discredit a key witness, this may create a genuine issue of material fact for trial. *See Typeright Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1159 (Fed. Cir. 2004).

### III. ANALYSIS

#### A. Jurisdiction to Decide Affirmative Defense

MWCC has asserted an affirmative defense of inequitable conduct. It has not, however, asserted a counterclaim seeking a declaratory judgment of unenforceability or invalidity based on inequitable conduct. When a defendant "raised invalidity only as an affirmative defense, and not in the form of a counterclaim, it is ordinarily not necessary for this court to address validity once it has found noninfringement." *Aerotel, Ltd. v. Telco Group, Inc.*, 433 F. App'x 903, 916-17 (Fed. Cir. July 26, 2011) (citing *Solomon Techs., Inc. v. Int'l Trade Comm.*, 524 F.3d 1310, 1319 (Fed. Cir. 2008)). At this point in the case, the Court has not yet entered judgment of noninfringement. Therefore, the Court has jurisdiction to decide the inequitable conduct defense.

#### B. Legal Standards for Inequitable Conduct Defense

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *In re Rembrandt Techs. LP Patent Litig.*, 899

F.3d 1254, 1272 (Fed. Cir. 2018) (quoting *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc)). "To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the [Patent and Trademark Office ("PTO")]." *Id*. (quoting *Therasense*, 649 F.3d at 1287).

Generally, the "materiality" required for a successful inequitable conduct defense is "but-for" materiality. *See Regeneron Pharm., Inc. v. Merus N.V.*, 864 F.3d 1343, 1350 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 122 (2018). A prior art reference is "but-for" material if the PTO "would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* However, when the patentee "has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material" and no further showing of materiality is required. *Therasense*, 649 F.3d at 1292.

The party asserting inequitable conduct must also prove "that the patentee acted with the specific intent to deceive the PTO." *See Regeneron*, 864 F.3d at 1350 (quoting *Therasense*, 649 F.3d at 1290). "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference." *Id*. at 1351. The alleged infringer need not present direct evidence of intent, and a court may infer intent from

circumstantial evidence. *Id.* "An inference of intent to deceive is appropriate where the applicant engages in 'a pattern of lack of candor,' including where the applicant repeatedly makes factual representations 'contrary to the true information he had in his possession.'" *Id.* (quoting *Apotex Inc. v. UCB, Inc.*, 763 F.3d 1354, 1362 (Fed. Cir. 2014)).

"When a party raises inequitable conduct as a defense to patent infringement, [t]he accused infringer must prove both elements – intent and materiality – by clear and convincing evidence." *Rembrandt Techs.*, 899 F.3d at 1272 (internal quotations and citation omitted). Ultimately, inequitable conduct "is an equitable issue committed to the discretion of the trial court." *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1333 (Fed. Cir. 2019).

C. **Evidence**

***Information Withheld from the PTO.*** – MWCC has presented strong evidence that Adams and his attorney Mary-Jacq Holroyd, withheld relevant and material information from the PTO in connection with the application for the '393 Patent. Of particular significance is Adams's failure to provide the PTO with information regarding his International Patent Application, filed September 2, 2011 with the Patent Cooperation Treaty's Receiving Office for the United States ("US/RO"). In February 2012, while the U.S. patent application was pending, the US/RO issued an

International Search Report ("ISR") identifying ten prior art references designated as Category Y documents, signifying that the documents are of "particular relevance." *See* ISR, Exh. 3 to Motion. Moreover, also in February 2012, the US/RO issued a Written Opinion clearly explaining its position that none of Adams's patent claims were patentable in view of the Category Y prior art documents. *See* Written Opinion, Exh. 4 to Motion. MWCC has presented uncontroverted evidence that Holroyd knew of the ISR, the Category Y documents, and the Written Opinion, yet decided not to disclose the information to the PTO. *See* Deposition of Mary-Jacq Holroyd, Exh. 5 to Motion. It is MWCC's position that the only reasonable explanation for Adams and his attorney to withhold this information was to deceive the PTO.

Deep Fix has presented testimony by Holroyd that she reviewed the Category Y documents and the Written Opinion, and that she believed, contrary to the view of the US/RO, that none of the information was relevant. *See* Holroyd Depo. [Doc. # 179], pp. 94-95. Deep Fix has presented expert testimony from Professor Paul Janicke, its designated expert on U.S. Patent and Trademark Office practice and procedure [Doc. # 178-1], and from John Hughett, its designated technical expert [Doc. # 178-2].[1] These witnesses challenge some of MWCC's evidence, or the

---

[1] Neither Janicke nor Hughett are permitted to opine on matters beyond their designated areas of expertise, and they are not permitted to express legal conclusions.

alleged lack of evidence supporting MWCC's inequitable conduct defense. For example, Janicke opines that Holroyd "made sensible judgments about the prior art she had in hand and about what to submit to the PTO." Declaration of Paul Janicke [Doc. # 178-1], p. 15. This testimony places Holroyd's credibility in issue.

***Verified Statement*.**– MWCC has also presented evidence that Adams engaged in inequitable conduct by submitting a false "Verified Statement" in connection with the application for the '393 Patent. Specifically, although in May 2010, Adams assigned his interest in his invention to Commonwealth Investment Group ("CIG"), in September 2010, Adams signed and caused to be filed with the PTO a "Verified Statement" representing falsely that he had not assigned his rights in the invention to any "person, concern or organization." *See* Verified Statement, Exh. 10 to Motion. The "Verified Statement" includes an acknowledgment that willful false statements "are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed." *Id.* at 2. It is MWCC's position that the Verified Statement was false when made, and that Adams knew the Verified Statement was false when he submitted it to the PTO. Testimony from Malcolm Woodward, who

prepared the Verified Statement for Adams's signature, appears to support MWCC's position. *See* Deposition of Malcolm Woodward, Exh. 22 to Motion, pp. 152-53.

Deep Fix argues in response that Adams and Woodward included a copy of the assignment from Adams to CIG in the provisional application package. Therefore, Deep Fix argues, the "most likely explanation" is that Woodward checked the box indicating no assignment to any person, concern, or organization because he "believed that he only needed to list assignees not already disclosed." Response [Doc. # 177], pp. 18-19.

Deep Fix argues also that "the assignment has nothing to do with patentability" and, therefore, cannot serve as the basis for an inequitable conduct defense. As stated clearly on the "Verified Statement," however, willful false statements "may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed."

### D. Conclusion

MWCC has presented evidence that could establish Adams and Holroyd intentionally withheld relevant information, including a Written Opinion from the US/RO holding and explaining why none of Adams's patent claims were patentable, in order to deceive the PTO. MWCC has also presented evidence that Adams submitted a false "Verified Statement" to the PTO, a false statement that had been

prepared by Woodward. The Court finds that the credibility of Holroyd and Woodward is of utmost importance in this case. As noted above, the Court cannot make credibility determinations on summary judgment. Therefore, the Court will deny the Motion for Summary Judgment and hold a bench trial on the inequitable conduct defense. At trial, the Court will have the opportunity to see and hear the witnesses as they testify and make the necessary evaluation of their credibility.

## IV. CONCLUSION AND ORDER

Based on the foregoing, it is hereby

**ORDERED** that MWCC's Motion for Summary Judgment [Doc. # 170] is **DENIED**. It is further

**ORDERED** that counsel shall file a Joint Pretrial Order by **December 6, 2019**, and shall appear before the Court on **December 18, 2019, at 10:00 a.m.** for docket call in connection with the trial to the Court of MWCC's inequitable conduct defense.

SIGNED at Houston, Texas, this **15th** day of **November, 2019.**

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE